Margaret L. Sell (SBN 184088)
msell@ghlaw-llp.com
Lilla Shkolnikov (SBN 219484)
lshkolnikov@ghlaw-llp.com
GROTEFELD, HOFFMANN, LLP
700 Larkspur Landing Circle, Suite 280
Larkspur, CA 94939
Telephone: 415.344.9670
Facsimile: 415.989.2802

Attorneys for Plaintiff PUBLIC RISK INNOVATION, SOLUTIONS, AND MANAGEMENT (PRISM)

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUBLIC RISK INNOVATION, SOLUTIONS, AND MANAGEMENT, <br><br> Plaintiff, <br><br> vs. <br><br> TESLA, INC., a Delaware corporation, and DOES 1 THROUGH 50, inclusive, <br><br> Defendants. | Case No.: _____ <br><br> **COMPLAINT FOR PROPERTY DAMAGE** |

NOW COMES Plaintiff Public Risk Innovation, Solutions, and Management, by and through its attorneys, GROTEFELD HOFFMANN, LLP, and for its Complaint against Defendant TESLA, INC., a Delaware corporation, and DOES 1 through 50, and each of them, and allege that at all relevant times herein upon information and belief as follows:

## PARTIES

1.  At all relevant times herein, Plaintiff Public Risk Innovation, Solutions, and Management (hereinafter "Plaintiff" and/or "PRISM") is and was a joint powers authority formed pursuant to the laws of the State of California in 1979. At all relevant times herein, Plaintiff provided property coverage under a Memorandum of Coverage ("MOC") to public

agencies which it calls "Members" a/s/o Contra Costa County (hereafter the "County"). The County was a Member of PRISM's Property Program, and at all relevant times, PRISM issued a MOC to the County for the period from March 31, 2022 through March 31, 2023. Plaintiff is the subrogee of the County under the MOC and brings this action as a real party in interest.

2. At all relevant times alleged herein, Plaintiff provided property coverage for the County, which owned and operated a 2016 Pierce fire truck with license number 1471006 and VIN 4P1BCAGF2GA016017, referenced throughout this complaint as the "Subject Fire Truck." The County and the Subject Fire Truck were covered by the MOC issued by Plaintiff PRISM.

3. Defendant TESLA, INC. ("Tesla") is a Delaware corporation that had its principal place of business in Palo Alto, California, from approximately 2003 until December 1, 2021, at which point it moved its principal place of business to Austin, Texas. Tesla designs, develops, manufactures, tests, markets, distributes, sells, and leases electric vehicles under the brand name "Tesla." It also offers services related to those vehicles, including designing, developing, and periodically sending over-the-air updates for advanced driver assistance systems ("ADAS") software in Tesla vehicles.

4. Tesla was the manufacturer of a 2014 Tesla Model S grey vehicle with license number 7HSJ063 and VIN 5YJSA1H10EFP44876, referenced throughout this complaint as the "Subject Tesla."

5. Defendants DOES One (1) through Fifty (50), inclusive, and each of them, are unknown to Plaintiff who, therefore, sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as DOE is legally responsible in some manner for the events and happenings referred to herein. Plaintiff will ask leave to amend this Complaint when the true names and capacities of defendants sued as DOES One (1) through Fifty (50) are ascertained.

6. Plaintiff is informed and believes, and thereon alleges, that at all appropriate times in this Complaint, Defendants Tesla and DOES One (1) through Fifty (50) (hereinafter jointly referred as "Defendants"), and each of them, were the agents, servants, employees, joint

venturers, or contractors of their co-Defendants, and in doing the things alleged in this Complaint were acting within the scope, course and authority of said agency, employment, contract, or joint venture. Each and every Defendant, as aforesaid, when acting as a principal, actively participated in, controlled, authorized, aided and abetted, incited, compelled, coerced, directed, or subsequently ratified and/or adopted, each and all of the acts or conduct alleged herein, with full knowledge of all the facts and circumstances related to the things alleged in this Complaint.

**GENERAL ALLEGATIONS**

7. Plaintiff hereby re-alleges and incorporates by reference each of the allegations set forth above as though fully set forth herein.

8. At all relevant times, the County owned the Subject Fire Truck.

9. This subrogation action arises from fire damages sustained on or about February 18, 2023, when the Subject Tesla failed to yield to flashing emergency and caution lights and, as a result, crashed into the Subject Fire Truck (hereinafter referred to as the "Collision").

10. On or around February 18, 2023, at approximately 3:54 a.m. Giovanni Mendoza (hereinafter the "Driver") was traveling in the Subject Tesla with the "Autopilot" feature engaged. The Subject Tesla was travelling in the number two lane on Interstate 680 northbound when it collided with the Subject Fire Truck, which was parked diagonally, blocking the number one and number two lanes for traffic control due to an unrelated traffic emergency. A second firetruck was on the scene as well as two CHP vehicles. Both firetrucks and both CHP vehicles had their emergency lights flashing prior to the Collision.

11. At the time of the Collision, the Driver was not controlling the Subject Tesla, but, instead, was passively sitting in the driver's seat with the "Autopilot" feature engaged. Investigation indicates that the Subject Tesla was in "Autopilot" for approximately 12 minutes prior to the Collision, with no accelerator pedal or brake pedal inputs from the Driver during that time and was travelling at a speed of 71 mph during that 12-minute period. Data also showed that the Driver generally maintained contact with the steering wheel until the time of the Collision.

12. As a result of the Collision, the Subject Tesla sustained major frontal damage, the Fire Truck sustained property damage, the Driver of Subject Tesla died, and personal injuries were suffered by a passenger in the Subject Tesla and multiple on-scene first responders.

13. Tesla began equipping its vehicles with ADAS technology in 2014. Tesla marketed its ADAS technology under various names, including "Autopilot," "Enhanced Autopilot," and/or "Full Self-Driving Capability," all of which imply that its vehicles were truly self-driving cars.

14. It is believed that the Driver of the Subject Tesla relied upon the representations made by Tesla about the self-driving capabilities of its vehicles when he purchased the Subject Tesla, a Tesla Model S, from its prior owner, Jorge Ventura, on March 4, 2021. It is further believed that, when the Driver purchased the Subject Tesla, he understood that it would drive itself and he no longer needed to drive it. It is believed that, based on representations the Driver heard from Tesla, he believed the Subject Tesla was a safer driver than a human and relied on it to perceive and react to traffic in front of him. It is believed that the Driver trusted the "Autopilot" feature to drive the vehicle autonomously on the freeway, including on the morning of the Collision.

15. Investigation has revealed that Tesla has been aware of limitations in its Autopilot's ability, including limitations that may lead to missed detections of first responder/law enforcement vehicles. Specifically, in the Subject Tesla, Telsa knew that its vision system did not differentiate emergency vehicles with activated caution lights from other vehicles on the road during the day or night. Tesla's vision system in the Subject Tesla was based on single frames, which means that it sees each moment of time individually, and using each single frame, tries to detect a vehicle in only that frame. When flashing lights exist at a scene, the frames alternate between extremely saturated frames and extremely dark frames. The Autopilot system sees the frames as either very bright or very dark, rather than interpreting the changing light intensity as a caution signal as a human would. This limitation based on the single frame interpretation leads to missed detections in the system.

16. In September of 2021, approximately eighteen months before the Collision, Tesla

created a software update to enhance system detectability for caution lights associated with emergency vehicles. Despite this update, incidents of Tesla vehicle colliding with first responder/law enforcement vehicles continued to occur.

17. Investigation has revealed that Tesla has acknowledged that, while its updates may improve the system's detection and response capabilities for caution lights, they would not work for all Tesla vehicles. Investigation further revealed that approximately a year and a half before the Collision, Tesla knew that it's over-the-air software fix to improve its vehicle's detection of emergency caution lights would not work on the Subject Tesla.

18. At the time of the Collision, the Autopilot system in the Subject Tesla did not differentiate the emergency vehicles with activated caution lights from other vehicles on the road. The Subject Tesla's Autopilot system saw single frames in the vision system that were either very dark or very bright, leading to the missed detection of the multiple emergency vehicles with activated caution lights, causing the Subject Tesla to crash into the Subject Fire Truck.

19. At all relevant times, Defendant Tesla and DOES 1-50 were engaged in the business of manufacturing, engineering, fabricating, designing, assembling, importing, distributing, selling, inspecting, servicing, repairing, marketing, advertising, warranting, modifying, equipping, and leasing, renting, wholesaling, and selling the Subject Tesla. Defendants knew, or in the exercise of reasonable care should have known, that the Subject Tesla would be used in the manner described herein, without inspection for defects in its function, parts, or design, including, but not limited to, as to Autopilot mode, for use in the State of California and elsewhere. At all relevant times, the Subject Tesla, and similar vehicles, were designed, manufactured, marketed, advertised, and placed into the stream of commerce by Tesla and DOES 1-50, and each of them, and their officers, directors, employers, salespeople, contractors, and/or managing agents.

20. At all relevant times, the Subject Tesla contained design, manufacturing, and warning defects which posed an unreasonable risk of property damage, as well as potential injury or death. The Subject Tesla and each of its component parts was unsafe and dangerous

when used for its intended use and reasonably foreseeable misuses by reason of defects in its design and/or manufacturing and/or failure to warn by Tesla and DOES 1-50, and each of them.

21. The Subject Tesla was used by the Driver on or about February 18, 2023, as intended and in a reasonably foreseeable manner. The Subject Tesla did not perform as Tesla and DOES 1-50 claimed the vehicle would perform and as ordinary consumers expect these vehicles to perform. The Subject Tesla was travelling in excess of the speed limit and at a speed that was unsafe for traffic conditions. Tesla's Autopilot did not timely perceive, sense, or react to changing traffic conditions in front of the Subject Tesla; did not perceive, react, and avoid commonly occurring roadway and traffic conditions and hazards, including but not limited to the presence of first responder/emergency vehicles; and did not brake or otherwise take evasive action to prevent the Collision with the Subject Fire Truck.

22. The Subject Tesla and similar vehicles manufactured and/or sold by Tesla and DOES 1-50 are deceptive and unsafe, including but not limited to, as a result of Tesla conferring to its customers a false sense of security that its Autopilot feature has autonomous functionality or is otherwise safe in all traffic collisions, including freeway conditions and in excess of freeway speeds. As a foreseeable consequence, Tesla's customers, including the Driver, believe they are operating an "autonomous" vehicle and are less attentive to roadway conditions and hazards, are less focused on driving, and have a diminished attention to the roadway and to avoid collisions. Ordinary consumers and users do not appreciate, and are not properly informed of, the potential risks, dangers, and limitations of Tesla's Autopilot functionality and ability.

23. Plaintiff is informed and believes and herein alleges that prior to February 18, 2023, Defendants knew and were aware of the manufacturing, design, and warning defects, including but not limited to those related to the Subject Tesla's Autopilot feature. Defendants knew or should have known of the dangerous and defective nature of the Subject Tesla from their own internal inspections, testing, and quality control procedures, and from prior collisions, lawsuits, warranty claims, and/or news articles. Defendants should have put in place features to limit the use and/or protect their consumers and others on the roadway against

these dangers.

24. Despite their awareness of the defects in the Subject Tesla, Defendants, and each of them, failed to warn purchasers and users of Tesla's vehicles, including the Driver, of said dangers, defects, and limitations of the Subject Tesla, and failed to properly inform their consumers and others of the limitations of the Subject Tesla's Autopilot feature.

25. As a direct and legal result of the conduct of Defendants and each of them, and of the defects inherent in the Subject Tesla, the County sustained property damage to the Subject Fire Truck.

26. Pursuant to the PRISM Property Program and the MOC, the County made a claim to Plaintiff seeking reimbursement and indemnification for damages and expenses resulting from the Collision. Accordingly, Plaintiff was required to and did make payments to or on behalf of the County in the amount of at least $280,192.72.

27. In consideration of Plaintiff's payments, the County subrogated to Plaintiff all rights, claims and interests that it may have against any person or entity that may be liable for causing Plaintiff's damages resulting from the Collision.

**FIRST CAUSE OF ACTION**
**Strict Products Liability**
(Against Defendant Tesla and Does 1–50)

28. Plaintiff hereby re-alleges and incorporates by reference each of the allegations set forth above as though fully set forth herein.

29. Plaintiff was harmed by the Subject Tesla, a product that is manufactured, distributed, marketed, advertised, and sold by Defendants Tesla and DOES 1–50.

30. At the time Defendants sold the Subject Tesla, the Subject Tesla was dangerous, hazardous, and unsafe both for its intended use and/or for its reasonably foreseeable misuses. The Subject Tesla contained inherent vices and defects both in design and manufacturing, and by Defendants' failures to warn of the Subject Tesla's defects and limitations, all of which Defendants were aware at all relevant times.

31. At all relevant times, Defendant Tesla and DOES 1–50 advertise, market, and

claim that Autopilot is safe and as good as or better than a human driver at detecting hazards, changing conditions, and traffic. Consumers, including the Driver, are informed and expect that Tesla's "Autopilot" vehicles will drive safely and autonomously, and will steer, maneuver, brake, accelerate, lane keep, detect, avoid, and adapt to hazards and changing traffic conditions in real time without human input. At all relevant times, Tesla distributed promotional materials and videos that depict Tesla's vehicles without a natural person in the vehicle. Tesla's advertising, marketing, and promotions depict Autopilot as an autonomous function that is safe in any traffic conditions.

32. At all relevant times, Defendant Tesla and DOES 1–50 did not place reasonable parameters or limitations on their customers for the use of its Autopilot feature. Consumers, including the Driver, were and are allowed to use Autopilot in any manner, traffic, or conditions, including on metropolitan freeways and at speeds in excess of the speed limit. Tesla has not implemented technology that warns drivers to remain focused on driving.

33. As a foreseeable consequence, Tesla's customers believe they are operating an "autonomous" vehicle and are less attentive to roadway conditions and hazards, less focused on driving, and have a diminished attentiveness and capacity to avoid collisions. Ordinary consumers and users are not properly informed of, and otherwise do not fully appreciate, the potential risks, dangers, and limitations of Autopilot's functionality and ability.

34. At all relevant times, Defendant Tesla and DOES 1–50, knew or with reasonable due care should have known, that their consumers were operating Tesla's vehicles without the human operator's active dynamic input. Tesla knew or with reasonable due care should have known, that numerous crashes, including fatal crashes, have occurred as a result of their customers belief that Tesla's vehicles are autonomous or that the Autopilot feature is an autonomous mode. These foreseeable uses, including foreseeable misuses, were a direct and proximate result of Tesla's representations that "Autopilot" is an autonomous mode and/or was safe for use without active human dynamic input and supervision.

35. As a result of and based upon Tesla's representations, Tesla's customers regularly transfer complete control of their vehicles to Tesla, including at times when it is

dangerous to do so. Similarly, the Driver used the Subject Tesla's Autopilot feature and transferred complete control of the Subject Tesla to Tesla in the moments leading up to and during the time of the Collision.

36. Defendants knew the Subject Tesla was to be purchased and used without inspection for defects by the users of the vehicle, including but not limited to the Driver. Defendants did not include sufficient instructions and/or warnings of the potential safety hazards to its consumers, including but not limited to the Driver.

37. In manufacturing, distributing, marketing, advertising, and selling its vehicles, including the Subject Tesla, Tesla acted with conscious disregard for the safety of others. Specifically, Tesla represented to others – including the Driver -- that the Tesla Model S was capable of fully autonomous driving even though Tesla knew the vehicle was not safe for fully autonomous driving.

38. The improper acts and/or omissions, as well as the negligence and carelessness of Defendants, and each of them, was a substantial factor in causing the Collision.

39. As a result of the Collision and the strict liability by Defendants, Plaintiff suffered damages in the amount of at least $280,192.72, and other costs, interest, expenses and attorney fees in an amount to be proved at trial.

**SECOND CAUSE OF ACTION**
**Negligent Products Liability**
**(Against Defendant Tesla and Does 1–50)**

40. Plaintiff hereby re-alleges and incorporates by reference each of the allegations set forth above as though fully set forth herein.

41. The County was harmed by the Subject Tesla, a product that is manufactured, distributed, marketed, advertised and sold by Defendants TESLA and DOES 1–50. At the time Defendants sold the Subject Tesla, the Subject Tesla was dangerous, hazardous, and unsafe both for its intended use and/or for its reasonably foreseeable misuses. The Subject Tesla contained inherent defects both in design and manufacturing, and by Defendants' failures to warn of the Subject Tesla's defects and limitations, of which they were aware at all relevant times.

Defendants knew the Subject Tesla was to be purchased and used without inspection for defects by the users of the vehicle, including but not limited to the Driver. Defendants did not include sufficient instructions and/or warnings of the potential safety hazards, including but not limited to the Driver.

42. Defendants were negligent in the design, manufacturing, installation, promotion, instructions, and warnings related to the Subject Tesla, including but not limited to the functionality and limitations of Autopilot. Said negligence includes, but is not limited to, Defendants' failures to place reasonable limitations on the Subject Tesla's autonomous features, and/or to reasonably warn and advise Tesla's customers, including the Driver, about the limitations of Autopilot.

43. In manufacturing, distributing, marketing, advertising, and selling its vehicles, including the Subject Tesla, Tesla acted with conscious disregard for the safety of others. Specifically, Tesla represented to others – including the Driver -- that the Tesla Model S was capable of fully autonomous driving even though Tesla knew the vehicle was not safe for fully autonomous driving. Moreover, Tesla knew that consumers, including the Driver, would rely on Tesla's "Autopilot" feature to operate their vehicles on public roadways in their stead, and that this presented a significant risk or property damage and injury to others, including other motorists and their passengers.

44. The Subject Tesla's failure to perform safely and as expected and the Defendants' negligence was a substantial factor in -- and a direct and proximate cause of -- the Collision between the Subject Tesla and the County's parked first responder/emergency vehicle, the Subject Fire Truck.

45. The improper acts and/or omissions, as well as the negligence and carelessness of Defendants, and each of them, was a substantial factor in causing the Collision.

46. As a result of the Collision and the negligence of Defendants, Plaintiff suffered damages in the amount of at least $280,192.72, and other costs, interest, expenses and attorney fees in an amount to be proved at trial.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff PRISM prays for judgment against Defendants Tesla and DOES 1 through 50, inclusive, as set forth below.

1. For compensatory damages in an amount at least $280,192.72, plus other costs, interest, expenses, and attorney fees in an amount to be proven at trial;

2. For costs incurred in this lawsuit;

3. For prejudgment and post-judgment interest as permitted by contract and/or law; and

4. For such other and further relief as this court may deem just and proper.

Dated: November 14, 2025         **GROTEFELD HOFFMANN LLP**

/s/ Margaret L. Sell

Margaret L. Sell, Esq.
Attorney for Plaintiff PUBLIC RISK INNOVATION, SOLUTIONS, AND MANAGEMENT (PRISM)